GREEN FOR WISCONSIN and Mark Green,
Petitioners,

v.

STATE of Wisconsin ELECTIONS BOARD and
Kevin J. Kennedy, in his official capacity as
Executive Director of the State of Wisconsin
Elections Board, Respondents.

Supreme Court

*No. 2006AP2452–OA. Decided October 31, 2006.*

2006 WI 120

(Also reported in 723 N.W.2d 418).

The Court entered the following order on this date:
The court having considered a petition for leave to
commence an original action filed on behalf of petition-
ers, Green for Wisconsin and Mark Green, a response
filed on behalf of respondent, State of Wisconsin Elec-

tions Board, and further responses filed by the parties in response to the court's orders of October 11, 2006 and October 18, 2006.

The court has worked diligently to assess and determine the legal and factual issues presented by the parties and to reach a consensus on how to proceed; we have explored the difficult substantive and procedural issues in an attempt to bring order out of complex and confusing filings, all to no avail.

The court also having considered a motion filed by the Wisconsin Democracy Campaign for leave to file a brief *amicus curiae* concerning the petition for leave to commence an original action by Green for Wisconsin and Mark Green;

IT IS ORDERED the motion of the Wisconsin Democracy Campaign is granted. The *amicus* brief is accepted for filing.

IT IS FURTHER ORDERED, consistent with the procedure followed by this court in prior cases, including *Panzer v. Doyle*, 2004 WI 52, 271 Wis. 2d 295, 680 N.W.2d 666, and *Employe Trust Funds Board, et al., v. Lightbourn, et al.*, 2001 WI 59, 243 Wis. 2d 512, 627 N.W.2d 807, that within 10 days of the date of this order the petitioners shall file an amended petition in the form of a complaint which, in numbered paragraph form, specifies the precise facts and legal theories upon which they rely. Within 10 days thereafter, the respondents shall file an answer to the amended petition/complaint. The court will then submit these documents to a reserve judge, to be named later, who will function under the continued jurisdiction of this court. The judge shall conduct such proceedings as he/she may deem necessary within the exercise of his/her discretion, including of an evidentiary nature, to

301

determine what factual issues are in dispute and whether they relate to the identified legal issues.

These further proceedings will be conducted in accordance with directives from the judge to the parties that will be forthcoming. The judge's findings on disputed, relevant facts, if any, shall be submitted to the court no later than November 30, 2006.

Because this court is not a fact-finding tribunal, it generally will not exercise its original jurisdiction in matters involving contested issues of fact. *In re Exercise of Original Jurisdiction*, 201 Wis. 123, 128, 229 N.W. 643 (1930) ("This court will with the greatest reluctance grant leave for the exercise of its original jurisdiction . . . where questions of fact are involved."); Wisconsin Supreme Court Internal Operating Procedures II.B3.

This court has on two occasions issued orders asking the parties to clarify the facts upon which the court would have to resolve the matter and to identify disputed facts, if any. It appears from the parties' submissions in response to those orders that there are truly contested issues of fact.

The parties do not appear to agree on what facts are relevant, nor do they agree on the characterization of many facts. The parties' stipulation of facts was for the circuit court proceeding and it does not cover all of the facts at issue here. The respondent says the only relevant facts are the Elections Board's record in creating the emergency rule and issuing the September 6, 2006 order. Petitioners say that the court must also consider the history of the Elections Board's actions regarding previous "conversions" of federal campaign accounts to state campaign accounts. Petitioners' "record" for purposes of an original action would apparently consist of the "record" transmitted by the Dane

County Circuit Court from the earlier circuit court case, the Elections Board record, documents regarding the complaint filed with the Federal Election Commission, and "factual assertions offered by the parties." In response, although the respondent's filings have cited certain paragraphs in the petitioners' filings to which it takes exception, it has failed to identify clearly the specific factual allegations that it allegedly disputes. The parties' seemingly inconsistent statements on the existence of disputed factual issues impinges upon this court's ability to evaluate at this point in time whether the case is of the type that should be resolved through the court's original jurisdiction, which is designed to resolve important legal questions but not to referee factual disputes.

The court recognizes that this case may implicate important and complex issues such as due process, freedom of speech, potentially retroactive rule-making, the federal campaign statutes, and administrative procedure/review. Nonetheless, the current posture of the proceedings does not provide the appropriate posture for this court to undertake an original action for final determination of the validity of the merits of the Board's interpretation and application of chapter 11 of the Wisconsin Statutes and the Emergency Rule to Green for Wisconsin/Green.

Even with respect to the legal issues, the parties' submissions follow different paths. For example, the parties disagree as to whether the court must decide an issue of federal law in order to resolve this matter, and they disagree as to whether this court must follow the procedure for judicial review of administrative agency decisions in reviewing the Elections Board's actions. The legal issues identified will require additional extensive briefing by the parties.

IT IS FURTHER ORDERED that within 10 days of the date of this order, each party shall provide the court with a detailed list of the issues of law which it intends to brief and which it believes the court must decide in order to resolve this matter. In framing the issues the parties should bear in mind the issues identified in this court's orders of October 11, 2006 and October 18, 2006, including original, appellate or administrative review jurisdiction.

The parties are advised that in the event that all factual disputes are settled, the legal issues presented are adequately set forth, and the jurisdictional issues resolved, the case may then be in an appropriate posture for this court to grant the petition for leave to commence an original action.

The parties shall be subsequently notified whether the court will assume original jurisdiction over this action and, if the court decides to grant the petition for leave to commence an original action, the parties shall be notified of the briefing schedule.

¶ 1. JON P. WILCOX, J. (*dissenting*). I respectfully dissent from the above order requiring further pleadings to address whether or not disputed factual issues exist.

¶ 2. Our October 18, 2006 order asked the parties about disputes of fact. Both parties responded that disputes of fact did not exist. Further pleadings and factual development will not shed any more light on whether this court should decide to exercise its original jurisdiction.

¶ 3. The petition for original jurisdiction raises serious allegations. It raises questions about retroactive rulemaking by a governmental agency, the right of free

speech, and the right to due process. In the context of a pending gubernatorial election, these allegations are all the more troubling.

¶ 4. Further pleadings are unnecessary. Accordingly, I respectfully dissent from the order.

¶ 5. I am authorized to state that Justices DAVID T. PROSSER and PATIENCE DRAKE ROGGENSACK join this dissent.

¶ 6. DAVID T. PROSSER, J. (*dissenting*). Petitioners Green for Wisconsin and Mark Green ask this court to grant an original action to challenge an emergency rule, an "order" based on that rule, and public accusations by the State Elections Board that have damaged Green's campaign for governor. The petitioners indicate that time is of the essence. The court's order delays an answer to the request and thus denies the petitioners every scintilla of timely relief.

¶ 7. When the court received the petition for an original action, my first preference was to grant it, hear argument, and decide the case before the election. This is what our court is supposed to do when it is faced with an urgent matter of critical importance to the people of Wisconsin.

¶ 8. My second preference was to grant the petition *without comment* and decide the case after the election. This course would have allowed the petitioners to claim that this court had acknowledged the seriousness of the issues they presented but would not have allowed them to claim victory. It would have stopped the bleeding even though it did not heal the wound.

¶ 9. My third preference was to deny the petition with a frank explanation that the court recognized the serious issues presented but did not see the case as quite ready for decision because the Elections Board's

"order" had no legal effect without a subsequent circuit court judgment. Our order could have stated that the court might not be able to do justice to a multitude of important questions in a short time frame and did not want to issue a decision that could affect the election. This candor would probably have deterred the Elections Board from proceeding with any enforcement action in court.

¶ 10. The majority rejects these options in favor of obfuscation and delay, forcing me to file a dissent.

¶ 11. Congressman Green is a candidate for governor. On January 25, 2005, Green's federal campaign committee—Mark Green for Congress—converted or transferred more than $1.2 million in campaign funds to his newly created state campaign committee—Green for Wisconsin.

¶ 12. Some states have acted timely to prevent or limit this kind of conversion. The Elections Board itself unanimously voted to propose a permanent rule to proscribe such conversions *prospectively* at a meeting on January 26, 2005. This permanent rule became effective in December 2005. Had this rule been in effect at an earlier time, Green's federal committee would not have been able to "convert" $1.2 million but it would have been able to use the money in less direct ways to benefit Green's campaign for governor.

¶ 13. The Green petitioners contend that on January 25, 2005—the day of the conversion—federal law clearly authorized Green's federal campaign committee to convert funds to Green's state campaign committee and that, on that date, nothing in state statute or rule prohibited or limited such a conversion. They point to similar conversions in Wisconsin in the past. They point to an existing Elections Board rule permitting such conversions. They point to written

analysis from the Elections Board's legal counsel, George Dunst, carefully explaining the law. Petitioners further contend that an "emergency rule" approved by a divided Elections Board on January 26, 2005, was not adopted in conformity with Wisconsin statutes, was subsequently suspended by the legislature, and, in any event, could not be applied retroactively to divest Green for Wisconsin of hundreds of thousands of dollars it had lawfully received. Green's contentions implicate serious and obvious questions of due process (notice and retro-activity), equal protection, and freedom of speech.

¶ 14. As Green sees it, the Elections Board unlaw-fully used its power to disrupt and discredit his campaign. As a result, Green for Wisconsin and Green filed suit in Dane County Circuit Court for a declaratory judgment and injunctive relief. Injunctive relief was denied after Department of Justice attorneys opened a second front, claiming that virtually the entire transfer of funds from the federal committee to the state committee was unlawful. This unexpected claim was well beyond anything endorsed by the Elections Board and contradicted the Board's official position.

¶ 15. The Green petitioners then filed a petition for an original action in this court seeking relief and vindication. In asking this court for a favorable ruling, they knowingly exposed themselves to the possibility of an adverse decision *on the merits* before the election. Believing in their position, petitioners bet on the fairness and integrity of this court.

¶ 16. The court has responded with nothing but delay. Its deliberate foot-dragging has prevented a timely ruling on Green's complaint, and its present order assures that if Green's position is ever vindicated, it will come too late to do him any good. The court is not willing to indicate that it will ever take the case because

that might imply that Green's position has merit. In short, a majority of the court determines that Green's bleeding should not stop.

¶ 17.   So much for impartiality.

¶ 18.   In evaluating this court's failure to act, the following observations are worth consideration:

a. At least six members of Congress are currently running for governor in their respective states.[1] The finance reports of the federal committees of these candidates are available at the website of the Federal Election Commission, http://www.fec.gov. These reports indicate that the federal committees have "distributed" most of their money in the period beginning in January 2005. They have "distributed" or expended far more than they have taken in. It is hard to imagine that Green's federal committee did not consider various options for distributing its money and check on the legality of a conversion under federal law before it converted the entire amount to the state committee. To accept the Department of Justice's position on federal law, one has to believe that Green's fully reported action was not only illegal, but also mindless or reckless.

b. Contributions to and distributions from Green's federal committee are available for public examination at the website of the Federal Election Commission. In the many months since Green's federal committee converted the $1.2 million, the Federal Election Commis-

---

[1] In addition to Congressman Green, Representative Robert L. Beauprez is the Republican candidate for governor of Colorado; Representative James O. Davis is the Democratic candidate for governor of Florida; Representative Jim Nussle is the Republican candidate for governor of Iowa; Representative C.L. Butch Otter is the Republican candidate for governor of Idaho; and Representative Ted Strickland is the Democratic candidate for governor of Ohio.

sion has had this information at its fingertips. The Commission has audited the committee's reports. There is no evidence that the Commission has ever disputed the legality of the conversion under federal law.

c. The emergency rule approved by the State Elections Board cites the *legality* of conversions as the basis for the "emergency." The Board's explanation of the emergency rule reads in part:

> The Elections Board finds that an emergency exists in the recent change in federal law that permits the transfer of the funds in a federal candidate campaign committee's account to the candidate's state campaign committee account . . . .

> In November, 2004, Congress amended the Federal Election Campaign Act . . . to permit the transfer of a federal candidate's campaign committee's funds to the candidate's state campaign committee, if state law permitted, and subject to the state law's requirements and restrictions.

> Because of Congress' action in November, 2004, money which had not been available to a state committee under BICRA, and which might not have qualified for use for political purposes in a state campaign because of its source or because of other noncompliance with state law, could now be transferred to a state committee, if state law permitted. Wisconsin law, under the Board's current rule, E1Bd 1.39 Wis. Adm. Code, allows for conversion of federal campaign committees, and their funds, to a state campaign committee without regard to the source of those funds and without regard to contribution limitations. (Emphasis added.)

d. The Elections Board references a general statute —Wis. Stat. § 5.05—as authority to adopt an emergency rule, and it relies primarily on its emergency rule, approved after the Green conversion was completed, to

justify its "order." The Board cites the entirety of Chapter 11, not specific sections, to supplement the emergency rule. If pre-2005 statutes had precluded the Green conversion, then the emergency rule would not have been necessary and the rule existing on January 25, 2005—upon which Green depended—would have been invalid.

e. The Elections Board adopted its so-called "order" on August 30, 2006. It has never attempted to enforce this "order" by filing a court action against Green for Wisconsin. In short, the Board has never had the courage to test the validity of its "order" in court. This suggests an intentional use of government power to injure a candidate rather than enforce the law.

f. Because this court's order fails to grant the petition, it may permit a spiteful Elections Board to seek enforcement of its "order" in the last few days before the election, compounding Green's injury. More important, it allows the Elections Board to drop everything it is doing after the election in order to make the case moot.

¶ 19. Among the most important elements to be considered by this court in exercising its original jurisdiction are the absence of any other adequate remedy and the fact that unless the Supreme Court intervenes, petitioners will suffer great and irreparable hardship. *See Application of Sherper's, Inc.*, 253 Wis. 224, 33 N.W.2d 178 (1948). In my view, these elements are present in this case.

¶ 20. Because the majority does not share this view, I respectfully dissent.

¶ 21. ROGGENSACK, J. (*dissenting*). I respectfully dissent from the above order requiring Green for Wisconsin and Mark Green (GFW/Green) and the Wis-

consin Elections Board (Board) to file yet another round of pleadings and to further address whether there are disputed factual issues. I would grant the petition and exercise original jurisdiction, just as we did in *State of Wisconsin ex rel. Nader v. Circuit Court for Dane County*, 04–2559–W (2004). I would do so because the allegations made in the petition for original jurisdiction allege violations of the right of free speech, the right to due process of law and retroactive rulemaking by a governmental agency.

¶ 22. These are serious allegations. If they have no support in the law, the people of Wisconsin deserve to know it. However, if these allegations are supported by the law, the people of Wisconsin have a right to know that as well.

¶ 23. Neither further factual development nor further pleading is necessary for this court to decide whether to exercise its original jurisdiction. GFW/Green and the Board agree that the stipulation of facts that was filed with the circuit court is factually accurate. (GFW/Green October 19, 2006 Response, p. 17; Board October 19, 2006 Response, p. 11) They also agree that the stipulation of facts provides a factual framework for the dispute before us.[1] The legal issue to be decided in the exercise of our original jurisdiction is whether GFW/Green's January 25, 2005 transfer of funds held by his federal campaign fund to GFW was lawful on the date the transfer was made.

---

[1] As the Board explained in its last submission to this court, "the Elections Board would stipulate to all facts to which the parties stipulated in the circuit court, which the Elections Board believes provides an accurate picture of the procedural history of the issues in dispute." Board October 19, 2006 Response, p. 11.

311

¶ 24. The above order unnecessarily delays making a decision on this issue until after the November 7, 2006 election, even though GFW/Green filed its petition for original jurisdiction on October 9, 2006. The people of Wisconsin have a right to know whether GFW/Green or the Board acted lawfully before November 7, 2006. This order makes that impossible. Accordingly, I respectfully dissent from the order.

¶ 25. I am authorized to state that Justice DAVID T. PROSSER joins this dissent.