STATE of Wisconsin ex rel. Ismael R. OZANNE
Plaintiff-Respondent

v.

Jeff FITZGERALD, Scott Fitzgerald, Michael Ellis
and Scott Suder, Defendants,

Douglas LA FOLLETTE,
Defendant-Petitioner-Movant.

STATE of Wisconsin and State of Wisconsin ex rel.
Michael D. Huebsch, Secretary of the Wisconsin
Department of Administration, Petitioners,

v.

CIRCUIT COURT FOR DANE COUNTY, the Honorable
MaryAnn Sumi Presiding, Ismael R. Ozanne, Dis-
trict Attorney for Dane County, Jeff Fitzgerald,
Scott Fitzgerald, Michael Ellis, Scott Suder, Mark
Miller, Peter Barca, Douglas La Follette, Joint
Committee on Conference, Wisconsin State Senate
and Wisconsin State Assembly Respondents.

Supreme Court

Nos. 2011AP613–LV, 2011AP765–W.
Oral argument June 6, 2011. —Decided June 14, 2011.

2011 WI 43

(Also reported in 798 N.W.2d 436.)

70

71

For the Plaintiff-Respondent oral argument by *Ismael R. Ozanne, Dane County District Attorney.*

For the Defendant-Petitioner-Movant oral argument by *Roger A. Sage, Roger Sage Law Office*, Madison.

For the petitioners oral argument by *Kevin St. John, deputy attorney general.*

For the respondents Dane County Circuit Court, Hon. MaryAnn Sumi, oral argument by *Marie A. Stanton, Hurley, Burish & Stanton*, Madison.

For the respondents Dane County District Attorney, oral argument by *Ismael R. Ozanne, Dane County District Attorney.*

For the respondent Peter Barca, oral argument by *Robert J. Jambois, Jambois Law office*, Madison.

For the respondent Mark Miller, oral argument by *Lester A. Pines, Cullen, Weston, Pines & Bach*, Madison.

For the respondent Douglas La Follette, oral argument by *Roger A. Sage, Roger Sage Law Office*, Madison.

The Court entered the following order on this date:

¶ 1. This court has pending before it a certification by the court of appeals in a petition for leave to appeal a non-final order and accompanying motion for temporary relief in Case No. 2011AP613–LV (L.C. #2011CV1244), pursuant to Wis. Stat. § (Rule) 809.61. The petition for leave to appeal a non-final order and motion arise out of a Dane County Circuit Court case in which Dane County District Attorney Ismael Ozanne

alleged violations of the Open Meetings Law, Wis. Stat. § 19.81, *et. seq.,* in connection with the enactment of 2011 Wisconsin Act 10 (the Act), commonly known as the Budget Repair Bill;

¶ 2. This court also has pending before it a petition for supervisory/original jurisdiction pursuant to Wis. Stat. §§ (Rules) 809.70 and 809.71 in Case No. 2011AP765–W filed on behalf of the State of Wisconsin and State of Wisconsin ex rel. Michael D. Huebsch, Secretary of the Wisconsin Department of Administration; Peter Barca has moved to dismiss this petition; Mark Miller and Ismael Ozanne have moved to file supplemental briefs;

¶ 3. On June 6, 2011, this court held oral argument in Case No. 2011AP765–W and Case No. 2011AP613–LV; wherein this court heard argument addressing whether the court should accept either the certification or the petition for supervisory/original jurisdiction or both; the court also heard argument on the merits of the pending matters. Based on the written submissions to the court and the oral arguments held on June 6, 2011;

¶ 4. IT IS ORDERED that the certification and motions for temporary relief in Case No. 2011AP613–LV are denied.

¶ 5. IT IS FURTHER ORDERED that the petition for original jurisdiction in Case No. 2011AP765–W is granted, *State ex rel. La Follette v. Stitt,* 114 Wis. 2d 358, 338 N.W.2d 684 (1983), and all motions to dismiss and for supplemental briefing are denied.

¶ 6. IT IS FURTHER ORDERED that all orders and judgments of the Dane County Circuit Court in Case No. 2011CV1244 are vacated and declared to be void ab initio. *State ex rel. Nader v. Circuit Court for Dane Cnty.,* No. 2004AP2559–W, unpublished order

74

(Wis. S. Ct. Sept. 30, 2004) (wherein this court vacated the prior orders of the circuit court in the same case).

██

¶ 7. This court has granted the petition for an original action because one of the courts that we are charged with supervising has usurped the legislative power which the Wisconsin Constitution grants exclusively to the legislature. It is important for all courts to remember that Article IV, Section 1 of the Wisconsin Constitution provides: "The legislative power shall be vested in a senate and assembly." Article IV, Section 17 of the Wisconsin Constitution provides in relevant part: "(2) . . . No law shall be in force until published. (3) The legislature shall provide by law for the speedy publication of all laws."

¶ 8. In *Goodland v. Zimmerman*, 243 Wis. 459, 10 N.W.2d 180 (1943), the court focused on fundamental separation of powers principles and addressed whether a court has the power to enjoin publication of a bill duly enacted by the legislature. The court first explained that "governmental powers are divided among the three departments of government, the legislative, the executive, and judicial." *Id.* at 466–67. The court then explained that the "judicial department has no jurisdiction or right to interfere with the legislative process. That is something committed by the constitution entirely to the legislature itself." *Id.* at 467. The court held that "[b]ecause under our system of constitutional government, no one of the co-ordinate departments can interfere with the discharge of the constitutional duties of one of the other departments, no court has jurisdiction to enjoin the legislative process at any point." *Id.* at 468. The court noted that "[i]f a court can intervene and prohibit the publication of an act, the court determines what shall be law and not the legislature. If the court

does that, it does not in terms legislate but it invades the constitutional power of the legislature to declare what shall become law. This [a court] may not do." *Id.*

¶ 9.   Although all orders that preceded the circuit court's judgment in Case No. 2011CV1244 may be characterized as moot in some respects, the court addresses whether a court can enjoin publication of a bill. The court does so because whether a court can enjoin a bill is a matter of great public importance and also because it appears necessary to confirm that *Goodland* remains the law that all courts must follow. *State v. Cramer,* 98 Wis. 2d 416, 420, 296 N.W.2d 921 (1980) (noting that we consider questions that have become moot "where the question is one of great public importance . . . or of public interest," or "where the problem is likely to recur and is of sufficient importance to warrant a holding which will guide trial courts in similar circumstances"). Accordingly, because the circuit court did not follow the court's directive in *Goodland,* it exceeded its jurisdiction, invaded the legislature's constitutional powers under Article IV, Section 1 and Section 17 of the Wisconsin Constitution, and erred in enjoining the publication and further implementation of the Act.

¶ 10.   Article IV, Section 17 of the Wisconsin Constitution vests the legislature with the constitutional power to "provide by law" for publication. The legislature has set the requirements for publication. However, the Secretary of State has not yet fulfilled his statutory duty to publish a notice of publication of the Act in the official state newspaper, pursuant to Wis. Stat. § 14.38(10)(c). Due to the vacation of the circuit court's orders, there remain no impediments to the Secretary of State fulfilling his obligations under § 14.38(10)(c).

¶ 11.  IT IS FURTHER ORDERED that we have concluded that in enacting the Act, the legislature did not employ a process that violated Article IV, Section 10 of the Wisconsin Constitution, which provides in relevant part:   "The doors of each house shall be kept open except when the public welfare shall require secrecy." The doors of the senate and assembly were kept open to the press and members of the public during the enactment of the Act. The doors of the senate parlor, where the joint committee on conference met, were open to the press and members of the public. WisconsinEye broadcast the proceedings live. Access was not denied.[1] There is no constitutional requirement that the legislature provide access to as many members of the public as wish to attend meetings of the legislature or meetings of legislative committees.

¶ 12.  It has been argued to the court that the legislature amended Article IV, Section 10 of the Wisconsin Constitution by its enactment of the Open Meetings Law. That argument is without merit. Article XII, Section 1 of the Wisconsin Constitution establishes the requirements that must be met in order to amend the Wisconsin Constitution through action initiated in the legislature. Article XII, Section 1 requires that both houses of the legislature pass the proposed amendment in two successive sessions of the legislature, and then the proposed amendment must be submitted to the people. It is only when the people have approved and ratified a proposed amendment initiated in the legisla-

---

[1] The transcripts of the hearings before the circuit court were filed with this court as part of the appendices accompanying the various motions and petitions filed herein.

ture that a constitutional amendment occurs. *Milwaukee Alliance Against Racist & Political Repression v. Elections Bd.*, 106 Wis. 2d 593, 603, 317 N.W.2d 420 (1982). It is beyond dispute that the Open Meetings Law, Wis. Stat. § 19.81, *et seq.,* was not adopted by the constitutional process required by Article XII, Section 1 of the Wisconsin Constitution.

¶ 13. It also is argued that the Act is invalid because the legislature did not follow certain notice provisions of the Open Meetings Law for the March 9, 2011 meeting of the joint committee on conference. It is argued that Wis. Stat. § 19.84(3) required 24 hours notice of that meeting and such notice was not given. It is undisputed that the legislature posted notices of the March 9, 2011 meeting of the joint committee on conference on three bulletin boards, approximately 1 hour and 50 minutes before the start of the meeting. In the posting of notice that was done, the legislature relied on its interpretation of its own rules of proceeding. The court declines to review the validity of the procedure used to give notice of the joint committee on conference. *See Stitt,* 114 Wis. 2d at 361. As the court has explained when legislation was challenged based on allegations that the legislature did not follow the relevant procedural statutes, "this court will not determine whether internal operating rules or procedural statutes have been complied with by the legislature in the course of its enactments." *Id.* at 364. "[W]e will not intermeddle in what we view, in the absence of constitutional directives to the contrary, to be purely legislative concerns." *Id.* The court's holding in *Stitt* was grounded in separation of powers principles, comity concepts and "the need for finality and certainty regarding the status of a statute." *Id.* at 364–65.

¶ 14. The court's recent decision in *Milwaukee Journal Sentinel v. Wisconsin Department of Administration*, 2009 WI 79, 319 Wis. 2d 439, 768 N.W.2d 700, provides no support for the invalidation of the Act. In *Milwaukee Journal Sentinel*, a party contended that by ratifying a union contract the legislature also amended the Public Records Law to be consistent with Article 2/4/4 of the contract. *Id.*, ¶ 34. In order to answer the question presented, the court reviewed the enactment of the ratifying statute to see whether Article 2/4/4 of the contract was enacted by bill and was published as Article IV, Section 17(2) of the Wisconsin Constitution requires. *Id.*, ¶¶ 22, 34. The court concluded that the legislature did not take the additional constitutionally required actions that were necessary for amendment of the Public Records Law. *Id.*, ¶¶ 24, 35. In so doing, the court did not review whether the legislature followed its own procedural rules in ratifying the contract, and the court did not invalidate any law. The court looked only at what Article IV, Section 17 required in order to cause a portion of the union contract to become law.

¶ 15. The court's decision on the matter now presented is grounded in separation of powers principles. It is not affected by the wisdom or lack thereof evidenced in the Act. Choices about what laws represent wise public policy for the State of Wisconsin are not within the constitutional purview of the courts. The court's task in the action for original jurisdiction that we have granted is limited to determining whether the legislature employed a constitutionally violative process in the enactment of the Act. We conclude that the legislature did not violate the Wisconsin Constitution by the process it used.

¶ 16. Chief Justice Shirley S. Abrahamson, Justice Ann Walsh Bradley and Justice N. Patrick Crooks concur in part and dissent in part from this order.

¶ 17. DAVID T. PROSSER, J. (*concurring*). I join this court's order but write separately to provide additional background and analysis.

I

¶ 18. This case is an offshoot of the turbulent political times that presently consume Wisconsin. In turbulent times, courts are expected to act with fairness and objectivity. They should serve as the impartial arbiters of legitimate legal issues. They should not insert themselves into controversies or exacerbate existing tensions. In the present dispute, different parties claim to speak for the State. It is the inescapable responsibility of this court to determine the law to facilitate a resolution of the dispute.

¶ 19. Accordingly, a majority of the court has determined that this litigation qualifies for and should be accepted as an original action under Article VII, Section 3(2) of the Wisconsin Constitution. The litigation presents issues of exceptional constitutional importance. It is of high public interest. It implicates the powers of all three branches of government. It affects most public employees in Wisconsin as well as taxpayers. Although the defendants in *State ex rel. Ozanne v. Fitzgerald,* 2011AP613–LV, might be able to appeal the decision of the circuit court, the identity and posture of the defendants makes such an appeal problematic in the short term without the intervention of one or more additional parties. The time required to sort out this procedure and follow the court's traditional briefing schedule would deny the petitioners timely relief by delaying the case until the court's next term, at the earliest. The majority deems this unacceptable considering the gravity of the issues and the urgency of their resolution. I am satisfied that this case satisfies several

of the court's criteria for an original action *publici juris,* *Petition of Heil,* 230 Wis. 428, 440, 284 N.W. 42 (1939), and that there are no issues of material fact that prevent the court from addressing the legal issues presented. *Wis. Prof'l Police Ass'n v. Lightbourn,* 2001 WI 59, 243 Wis. 2d 512, 627 N.W.2d 807; *State ex rel. La Follette v. Stitt,* 114 Wis. 2d 358, 338 N.W.2d 684 (1983); *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 239 N.W.2d 313 (1976).

¶ 20.  Simply stated, no matter how long we waited to consider a perfect appeal, the legal issues before the court would not change. Whether the case is decided now or months from now at the height of the fall colors, the court would be required to answer the same difficult questions. Delaying the inevitable would be an abdication of judicial responsibility; it would not advance the public interest.

II

¶ 21.  On February 15, 2011, the Assembly's Committee on Assembly Organization introduced January 2011 Special Session Assembly Bill 11, at the request of Governor Scott Walker. Governor Walker said that this "budget repair bill" was intended to address the state's fiscal situation in both the 2009–2011 biennium ending June 30, 2011, and the 2011–2013 biennium beginning July 1. The proposed legislation included provisions requiring additional public employee contributions for health care and pensions, curtailing collective bargaining rights for most state and local public employees, and making appropriations. Because the Bill contained appropriations, three-fifths of all the members of each house had to be present for any vote on passage to constitute a quorum. Wis. Const. art. VIII, § 8.

¶ 22. Special Session Assembly Bill 11 was referred to the Joint Committee on Finance on February 15 where a public hearing was held that day. On the following day, the Joint Committee took executive action. The Bill was amended and passed with an emergency statement attached, pursuant to Wis. Stat. § 16.47(2). The Bill was immediately calendared for debate in the Assembly on February 17.

¶ 23. According to its paper history, January 2011 Special Session Assembly Bill 11 was debated on February 17 and again on February 22. It was passed on February 22 and immediately messaged to the Senate. It was not received in the Senate, however, until February 25. The discrepancy in the paper record between Assembly messaging and Senate receipt is explained by the fact that the Bill engendered approximately 61 consecutive hours of debate on the February 22 Assembly Calendar. At least 128 Amendments were debated in the Assembly before the Bill was passed.

¶ 24. On February 25, the Senate read Special Session Assembly Bill 11 for the first time, referred it to the Committee on Senate Organization, withdrew it from that committee, and read it a second and third time. However, the Senate was unable to proceed because of the absence of the constitutional quorum necessary to act on a bill containing appropriations.

¶ 25. A companion bill to January 2011 Special Session Assembly Bill 11 had been introduced in the Senate on February 14 by the Committee on Senate Organization. *See* January 2011 Special Session Senate Bill 11. This Bill also was referred to the Joint Committee on Finance, given a public hearing on February 15, and favorably reported by the committee on February 16. It was placed on the Senate Calendar for debate on February 17.

¶ 26. On February 17, the Senate Bill was read a second time, amended, and ordered to a third reading. However, as with the Assembly Bill eight days later, the Senate could go no further because all 14 Democratic Senators had absented themselves from the chamber before the session began. The 14 senators left the state and did not publicly reappear in Madison until March 12. As noted, this action deprived the Senate of a quorum to act on any appropriation bill.

¶ 27. Governor Walker's proposed legislation created controversy and division. In the weeks following introduction of the two identical "budget repair bills," the Wisconsin State Capitol was the center of demonstrations against the governor. The building was taken over by protesters. By and large, the protesters did not impede the work of state government but their presence dominated the Capitol scene and captured international attention.

¶ 28. After several weeks of impasse, majority Republicans developed a strategy to pass a budget repair bill. On March 7 they instructed the Legislative Fiscal Bureau to strip out all elements of the Bill that would require a three-fifths quorum in the Senate. On March 9, they called for a conference committee in the Senate Parlor at 6:00 p.m. At that time, they adopted the stripped-down version of the Bill as an unamendable conference committee report. The vote was taken over the objection of Assembly Minority Leader Peter Barca, who asserted that the conference committee meeting violated Wisconsin's Open Meetings Law.

¶ 29. The Senate adopted the conference committee report on the evening of March 9. The Assembly adopted the conference committee report on March 10. The governor signed the Bill on March 11, 2011.

¶ 30. The conference committee meeting of March 9, 2011, and the subsequent litigation challenging the legality of that meeting are the subject of this original action.

### III

¶ 31. Article IV, Section 17 of the Wisconsin Constitution reads in part:

> (2) No law shall be enacted except by bill. *No law shall be in force until published.*
>
> (3) The legislature shall provide by law for the speedy publication of all laws. (Emphasis added.)

¶ 32. Wisconsin Stat. § 35.095 is entitled "Acts."[1] It is contained in Chapter 35 of the Wisconsin Statutes entitled "Publication and Distribution of Laws and Public Documents." Wisconsin Stat. § 35.095(3) reads in part:

> PUBLICATION. (a) The legislative reference bureau shall publish every act . . . within 10 working days after its date of enactment.
>
> (b) The secretary of state shall designate a date of publication for each act . . . . The date of publication may not be more than 10 working days after the date of enactment.

¶ 33. Wisconsin Stat. § 991.11, entitled "Effective date of acts," reads: "Every act . . . which does not expressly prescribe the time when it takes effect shall take effect on the day after its date of publication as

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

designated under s. 35.095(3)(b)." This is the date designated by the Secretary of State.

¶ 34. Wisconsin Stat. § 14.38 outlines additional duties of the Secretary of State. Subsection (10) reads in part that the Secretary of State shall:

> (c) Publish in the official state newspaper within 10 days after the date of publication of an act a notice certifying the number of each act, the number of the bill from which it originated, the date of publication and the relating clause. Each certificate shall also contain a notice of where the full text of each act can be obtained.

¶ 35. Following the passage of January 2011 Special Session Assembly Bill 11 and its approval by the governor, Secretary of State Douglas La Follette announced that he would designate March 25, 2011, the last day within the 10 working days after enactment allowed by statute, as the date for publication of the Act. He indicated that his reason for not designating an earlier date was to allow critics of the Act time to challenge the Act in court.

¶ 36. On March 16, Dane County District Attorney Ismael Ozanne filed suit in Dane County Circuit Court against several legislators and Secretary of State La Follette. Ozanne's suit accused four Republican legislative leaders of violating the state's Open Meetings Law, Wis. Stat. §§ 19.81–19.98, and Article IV, Section 10 of the Wisconsin Constitution, in connection with the March 9, 2011, conference committee meeting. Ozanne asked that the circuit court declare "void" "the actions taken by the Joint Committee of Conference" and sought a judgment that the "budget repair bill" be declared "void as the product of voidable actions by the Joint Committee of Conference." He also sought a

temporary and permanent injunction enjoining Secretary of State La Follette from publishing 2011 Wisconsin Act 10. In the latter connection, he moved for a temporary restraining order against La Follette.

¶ 37.   On March 17 the Dane County Circuit Court, Maryann Sumi, Judge, set a hearing on Ozanne's motion for a temporary restraining order. On March 18 the court held the hearing and granted Ozanne's motion to restrain implementation of 2011 Wisconsin Act 10 pending further hearing. Thereafter, Secretary La Follette rescinded his prior designation of March 25 as the date of publication. On March 31 Judge Sumi issued an amended order to the effect that 2011 Wisconsin Act 10 had not been published and is not in effect.

¶ 38.   On May 26 Judge Sumi filed findings of fact and conclusions of law and an opinion voiding 2011 Wisconsin Act 10.

IV

¶ 39.   The first and most obvious issue presented by this case is whether the Dane County Circuit Court, or any court in Wisconsin, may enjoin the publication of an act to prevent that act from becoming law. The answer is "no."

¶ 40.   This precise issue was settled in *Goodland v. Zimmerman,* 243 Wis. 459, 10 N.W.2d 180 (1943). In that case, the governor of Wisconsin sought to enjoin the secretary of state from publishing an act of the legislature that the governor had vetoed. Governor Goodland sought an injunction on grounds that the Assembly had failed to override his veto by the constitutionally required vote of two thirds of all members present. In other words, Governor Goodland sought to prevent publication of the act on constitutional

grounds. *Goodland,* 243 Wis. at 464–65. The court unanimously rejected his position.

¶ 41. The court was definitive that "the legislative process is not complete unless and until an enactment has been published as required by the constitution *and by statute." Id.* at 466 (emphasis added). Then the court added:

> There is no such thing known to the law as an unconstitutional bill. A court cannot deal with the question of constitutionality until a law has been duly enacted and some person has been deprived of his constitutional rights by its operation.

*Id.* Only after a law has been published may a person who is injured by the law challenge it in court. *Id.*

¶ 42. The court provided a textbook discussion of the separation of powers:

> It must always be remembered that one of the fundamental principles of the American constitutional system is that governmental powers are divided among the three departments of government, the legislative, the executive, and judicial, and that each of these departments is separate and independent from the others except as otherwise provided by the constitution. The application of these principles operates in a general way to confine legislative powers to the legislature, executive powers to the executive department, and those which are judicial in character to the judiciary. . . . While the legislature in the exercise of its constitutional powers is supreme in its particular field, it may not exercise the power committed by the constitution to one of the other departments.
>
> What is true of the legislative department is true of the judicial department. *The judicial department has no jurisdiction or right to interfere with the legislative process.* That is something committed by the constitu-

tion entirely to the legislature itself. It makes its own rules, prescribes its own procedure, subject only to the provisions of the constitution and it is its province to determine what shall be enacted into law.

*Id.* at 466–67 (emphasis added).

¶ 43. In short, "no court has jurisdiction to enjoin the legislative process at any point." *Id.* at 468 (citing cases from Wisconsin and other jurisdictions).

¶ 44. *Goodland* was decided nearly 70 years ago, but it remains fundamental law. In *State ex rel. Althouse v. City of Madison,* 79 Wis. 2d 97, 255 N.W.2d 449 (1977), this court cited *State ex rel. Martin v. Zimmerman,* 233 Wis. 16, 288 N.W. 454 (1939), with approval, noting that "the [*Martin*] court pointed out that the question of the validity of [an] act could not be entertained by any court prior to its enactment." *Althouse,* 79 Wis. 2d at 112. Justice Nathan Heffernan then quoted from *Goodland* at length and observed that, "If a court could enjoin publication of a bill, the [*Goodland*] court reasoned, it, not the legislature, would be determining what the law should be." *Althouse,* 79 Wis. 2d at 113. Turning back to *Goodland,* Justice Heffernan repeated the statement that "no court has jurisdiction to enjoin the legislative process at any point." *Id.*

¶ 45. *Goodland* also was cited approvingly by Justice Abrahamson in *State v. Washington,* 83 Wis. 2d 808, 816, 266 N.W.2d 597 (1978) to support the principle that Article IV, Section 1 and Article V, Section 1 of the Wisconsin Constitution are construed to "prohibit one branch of government from exercising the powers granted to other branches."

¶ 46. The majority of this court now concludes that the circuit court exceeded its authority in prohibiting publication of 2011 Wisconsin Act 10. This is not a

close question. Wisconsin law in this regard is long-standing and completely in line with the law in other jurisdictions. *See Murphy v. Collins,* 312 N.E.2d 772 (Ill. App. Ct. 1974); *Vinson v. Chappell,* 164 S.E.2d 631 (N.C. Ct. App. 1968); *State v. Sathre,* 110 N.W.2d 228 (N.D. 1961); *Collins v. Horten,* 111 So.2d 746 (Fla. Dist. Ct. App. 1959); *Maryland-Nat'l Capital Park & Planning Comm'n v. Randall,* 120 A.2d 195 (Md. 1956); *Randall v. Twp. Bd. of Meridian,* 70 N.W.2d 728 (Mich. 1955); *Kuhn v. Curran,* 56 N.Y.S.2d 737 (N.Y. Sup. Ct. 1944); *State ex rel. Carson v. Kozer,* 270 P. 513 (Or. 1928); *State ex rel. Flanagan v. South Dakota Rural Credits B.,* 189 N.W. 704 (S.D. 1922).

## V

¶ 47. Attacking the constitutionality of an act after it has been published is quite different from attacking its validity before it becomes law. This must be acknowledged. Nonetheless, no useful purpose would be served by inviting a new series of challenges to 2011 Wisconsin Act 10 after publication of the Act has been completed.

¶ 48. In my view, this case is governed by *Stitt.* In the *Stitt* case, the court was presented with a challenge to 1983 Wisconsin Act 3, *after* the act had been published. Senator Stitt argued that neither the Senate nor the Assembly had ever referred the legislation to the Joint Survey Committee on Debt Management, as appeared to be required by Wis. Stat. § 13.49(6). This statute provided in part that a proposal authorizing the issuance of state debt or revenue obligations "shall not be considered further by either house until the committee has submitted a report, in writing[.]"

¶ 49. The court's response was blunt:

Because we conclude this court will not determine whether internal operating rules or procedural statutes have been complied with by the legislature in the course of its enactments, we do not address the question of whether sec. 13.49(6), Stats., applies to this legislation. *To discuss or consider the petitioner's argument* that the procedure mandated in sec. 13.49, does not apply to Act 3 because the latter did not create state debt or revenue obligations as set forth in ch. 18, *would imply that this court will review legislative conduct to ensure the legislature complied with its own procedural rules or statutes in enacting the legislation. . . .* [W]e conclude we will not intermeddle in what we view, in the absence of constitutional directives to the contrary, to be purely legislative concerns.

. . . .

If the legislature fails to follow self-adopted procedural rules in enacting legislation, and such rules are not mandated by the constitution, courts will not intervene to declare the legislation invalid. The rationale is that the failure to follow such procedural rules amounts to an implied *ad hoc* repeal of such rules.

This principle has been expressed in 1 Sutherland, Statutory Construction (4th Ed.) sec. 7.04, p. 264, as follows:

"The decisions are nearly unanimous in holding that an act cannot be declared invalid for failure of the house to observe its own rules. Courts will not inquire whether such rules have been observed in the passage of the act. Likewise, the legislature by statute or joint resolution cannot bind or restrict itself or its successors as to the procedure to be followed in the passage of legislation."

*Stitt,* 114 Wis. 2d at 364, 365 (quoting 1 *Sutherland Statutory Construction* § 7.04, at 264 (4th ed.)) (emphasis added).

¶ 50. The court also quoted a passage from *McDonald v. State*, 80 Wis. 407, 411–12, 50 N.W. 1854 (1891), where the court concluded that "no inquiry will be permitted to ascertain whether two houses have or have not complied strictly with their own rules in their procedure upon the bill." *Stitt*, 114 Wis. 2d at 366.

¶ 51. In sum, "the legislature's adherence to the rules or statutes prescribing procedure is a matter entirely within legislative control and discretion, not subject to judicial review *unless the legislative procedure is mandated by the constitution.*" *Id.* at 365 (emphasis added).

## VI

¶ 52. When the circuit court voided 2011 Wisconsin Act 10, it scrutinized the Wisconsin Open Meetings Law and concluded that there had been two violations of the law:

> 80. A violation of the Open Meetings Law occurred when the Joint Committee of Conference met on March 9, 2011, because it failed to provide at least 24 hours advance public notice of the meeting, as required by Wis. Stat. § 19.84(3), and failed to provide even the two-hour notice allowed for "good cause" shown.

> 81. A violation of the Open Meetings Law occurred when the Joint Committee of Conference met on March 9, 2011, and failed to provide reasonable public access to the meeting, as required by Wis. Stat. § 19.83(1).

¶ 53. The circuit court acknowledged that Senate Chief Clerk Robert Marchant had advised Senate Majority Leader Scott Fitzgerald that no advance notice of the Joint Committee on Conference was required because the Senate and Assembly were in special session.

91

The court acknowledged that Marchant relied on Senate Rule 93(2), which provides that, when in special session, "notice of a committee meeting is not required other than posting on the legislative bulletin board[.]" Finding of Fact No. 15.

¶ 54. But the court found that, "No Joint Rule in effect on March 9, 2011, conflicts with the requirements of the Open Meetings Law that a public notice of every meeting of a governmental body must set forth the time, date, place and subject matter of the meeting, in a form reasonably likely to inform members of the public and news media, and that the notice shall be given at least 24 hours before the meeting." Finding of Fact No. 19. Thus, the court concluded: "There is no rule adopted by the legislature, applicable to the March 9, 2011, meeting of the Joint Committee of Conference, that conflicts with any requirement of the Open Meetings Law, within the meaning of Wis. Stat. § 19.87(2)." *See* Conclusions of Law ¶ 79.

¶ 55. I am troubled by the circuit court's apparent indifference to this court's holding in *Stitt.* The circuit court enjoined the publication of an act passed by the legislature, preventing it from becoming law. It justified this action by relying on statutory provisions that apply to the legislature except when the legislature says they do not.

¶ 56. Wisconsin Stat. § 19.87 entitled, "Legislative meetings," contains four exceptions. Subsection (1) reads in part as follows: "Section 19.84 shall not apply to any meeting of the legislature or a subunit thereof called solely for the purpose of scheduling business before the legislative body." Wis. Stat. § 19.87(1). The circuit court could not determine whether the Joint Committee of Conference failed to comply with subsec-

tion (1) without "inquiring" deeply into legislative procedure, contrary to this court's decision in *Stitt*.

¶ 57.  Subsection (2) provides: "No provision of this subchapter which conflicts with a rule of the senate or assembly or joint rule of the legislature shall apply to a meeting conducted in compliance with such rule." Wis. Stat. § 19.87(2). The circuit court second-guessed not only four legislative leaders but also the Senate Chief Clerk—an attorney—when it determined that no senate or assembly rule, including Senate Rule 93 (on which the Senate Chief Clerk relied), governed the notice requirements of the special session conference committee. The circuit court, in effect, told the Senate Chief Clerk that he did not know what the Senate rule meant.

¶ 58.  The circuit court concluded that the legislature should have provided public notice of the special session conference committee 24 hours in advance. The court did not acknowledge that thousands of demonstrators stormed and occupied the State Capitol within a few hours of the notice that a conference committee meeting would be held.

¶ 59.  The circuit court found that 20 seats were set aside for the public in the Senate Parlor, but it did not report that the entire proceedings were broadcast on WisconsinEye and events were observed online by Wisconsin state senators in Illinois.

¶ 60.  The circuit court determined that the Senate Parlor did not provide adequate public access under Wis. Stat. § 19.87(3), but it overlooked the fact that conference committees on state budgets routinely met in the Senate and Assembly Parlors until the State Capitol was renovated in the 1990s.

¶ 61.  The circuit court voided 2011 Wisconsin Act 10 on the basis of a committee meeting that lasted less

than five minutes—in a room packed with reporters and television cameras. This reality was captured on television and in photographs, one of which appeared on the front page of the *Wisconsin State Journal* on March 10, 2011 (see attached).

¶ 62. The circuit court has retained jurisdiction over the prosecution of four legislative leaders for alleged violations of the Open Meetings Law, but the additional remedy it imposed in voiding 2011 Wisconsin Act 10 effectively punished the executive branch as well as legislators who were not involved in the meeting.

¶ 63. The actions of the circuit court exceeded the court's authority and must be vacated.

## VII

¶ 64. The Dane County District Attorney and the circuit court contend that these concerns are all overcome by the Open Meetings Law itself. The circuit court held that, "The Open Meetings Law, Wis. Stat. § 19.81, et. seq., is based upon the constitutional requirement, applicable to the Wisconsin Legislature, that '[t]he doors of each house shall be kept open except when the public welfare shall require secrecy.' " Wis. Const. art. IV, § 10.

¶ 65. This proposition does not withstand careful examination.

¶ 66. Article IV, Section 10 was part of the original constitution approved in 1848. The provision reads in full:

> Each house shall keep a journal of its proceedings and publish the same, except such parts as require secrecy. The doors of each house shall be kept open except when the public welfare shall require secrecy.

Neither house shall, without consent of the other, adjourn for more than three days.

¶ 67. The manifest purpose of this provision is to prevent *state* legislative business from being conducted in secret except in extremely limited circumstances. The provision itself does not establish notice requirements for governmental meetings. It does not dictate the size or location of governmental meeting rooms. It does not apply to the executive branch or the judiciary or to local governments. And it certainly does not bar locking the doors of the Senate or Assembly or the Capitol during non-business hours. Applying the spirit of this constitutional provision to additional governmental meetings in Wisconsin has been a legislative undertaking.

¶ 68. The first open meetings law was enacted in 1959. Chapter 289, Laws of 1959. This means that more than a century passed before the legislature acted to effectively promote openness. The first law provided no notice requirements.

¶ 69. In 1976 this court decided *Lynch v. Conta,* which involved a private meeting of 11 members of the Joint Committee on Finance on March 11, 1975, during consideration of the state budget. The case involved Wis. Stat. § 66.77 (1975). The *Lynch* case led to changes in the Open Meetings Law at a special session of the legislature in June 1976. Chapter 426, Laws of 1975.

¶ 70. The special session bill that was approved in 1976 incorporated language from two Assembly amendments to 1975 Senate Bill 630, an open meetings bill that had been heavily debated in both houses earlier in the session but did not pass. The language is now contained in Wis. Stat. § 19.81(3):

In conformance with article IV, section 10, of the constitution, which states that the doors of each house

95

shall remain open, except when the public welfare requires secrecy, it is declared to be the intent of the legislature to comply to the fullest extent with this subchapter.

¶ 71. The rhetoric contained in the statute's "Declaration of Policy" does not transform the Open Meetings Law into a codification of Article IV, Section 10. There is no documentary support for such a proposition. Constitutional commands cannot be changed at the whim of the legislature; statutory provisions may.

¶ 72. Only a clear *constitutional* violation would justify voiding 2011 Wisconsin Act 10—and then only after the Act was published. There is no constitutional violation in this case.

¶ 73. For these reasons, briefly stated, I join the court's order.

# WISCONSIN STATE JOURNAL

MADISON, MARCH 11, 2011 ★ ★ www.madison.com

### STATE BUDGET CRISIS

# CAPITOL SHOCKER

## GOP'S QUICK MANEUVERS PUSH BILL THROUGH SENATE
## THOUSANDS STORM BUILDING, YELL 'GENERAL STRIKE!'

**THE GAVEL FALLS**

**ANGRY REACTION**

**LEGISLATION:** After a 3-week stalemate, Walker's budget repair bill set for final Assembly vote today.

**REACTION:** Protesters vow to remain in Capitol.

### How the bill was passed

### MORE INSIDE

### WEB EXTRA

¶ 74. SHIRLEY S. ABRAHAMSON, C.J. (*concurring in part and dissenting in part*). I agree that the Budget Repair Bill is not in effect. I further agree that the certification by the court of appeals should be denied.

¶ 75. Moreover, I agree that the challenge to the legality of the Budget Repair Bill, a bill that significantly affects all the people of this state, presents important fundamental constitutional issues about the separation of powers; the roles of the legislative, executive, and judicial branches of government; and judicial review.

¶ 76. It is exactly because the issues in the present case are of such constitutional and public policy importance that I do not join the order.

¶ 77. In a case in which the court is called upon to review the legitimacy of the legislative process, it is of paramount importance that the court adhere to the Wisconsin Constitution and its own rules and procedures, lest the legitimacy of the judicial process and this court's decision be called into question.

¶ 78. The Dane County Circuit Court took the time and made the effort to consider the issues carefully and write a 48–page decision, including findings of fact and conclusions of law, explaining and supporting its reasoning. In contrast, this court gives this important case short shrift. Today the majority announces for the first time that it is accepting the case. And today the majority decides the case.[1]

¶ 79. In rendering a decision, a court is to provide not merely an answer but also a reasoned, accurate explanation. A reasoned, accurate explanation is not an

---

[1] This case came to the court at the end of March. Thereafter, the court issued two separate orders asking the parties to address numerous questions. We held extended oral argument on June 6 presented by six parties.

inconsequential nicety that this court may disregard for the sake of convenience or haste. It is the cornerstone of the legitimacy of judicial decision-making.

¶ 80.    At first glance, the order appears to provide some support for broad conclusions reached on fundamental and complex issues of law. But on even casual reading, the explanations are clearly disingenuous, based on disinformation.

¶ 81.    Justice Prosser's concurrence is longer than the order. The concurrence consists mostly of a statement of happenings. It is long on rhetoric and long on story-telling that appears to have a partisan slant. Like the order, the concurrence reaches unsupported conclusions.

¶ 82.    In hastily reaching judgment, Justice Patience D. Roggensack, Justice Annette K. Ziegler, and Justice Michael J. Gableman author an order, joined by Justice David T. Prosser, lacking a reasoned, transparent analysis and incorporating numerous errors of law and fact. This kind of order seems to open the court unnecessarily to the charge that the majority has reached a pre-determined conclusion not based on the facts and the law, which undermines the majority's ultimate decision.

¶ 83.    Justice N. Patrick Crooks explains the flaws in the order's and concurrence's attempt to recast the petition for supervisory writ as an original action. He explains why this court should decide this case in an orderly appellate review of the circuit court's order with a full opinion. I join his writing.

¶ 84.    I write to emphasize that in a case turning on separation of powers and whether the legislature must abide by the Open Meetings Law and the Wisconsin Constitution in adopting the Budget Repair Bill, it is

imperative that this court carefully abide by its authority under the Constitution and follow its own rules and procedures.

¶ 85.    A court's failure to follow rules and a court's failure to provide a sufficient, forthright, and reasoned analysis undermine both the court's processes and the decision itself. Only with a reasoned, accurate analysis can a court assure the litigants and the public that a decision is made on the basis of the facts and law, free from a judge's personal ideology and free from external pressure by the executive or legislative branches, by partisan political parties, by public opinion, or by special interest groups.

## I

¶ 86.    At its most basic level this case is about the need for government officials to follow the Wisconsin Constitution and the laws.

¶ 87.    The District Attorney's challenge to the Budget Repair Bill asserts that the Open Meetings Law is a codification of the mandates expressly provided for in the Wisconsin Constitution. The District Attorney relies on Article IV, Section 10, "[t]he doors of each house shall be kept open," and also on Article I, Section 4:    "The right of the people peaceably to assemble, to consult for the common good, and to petition the government, or any department thereof, shall never be abridged."

¶ 88.    The legislature declared in the Open Meetings Law that the legislature would comply with the Law to the fullest extent "in conformance with article IV, section 10" of the Wisconsin Constitution.[2] Statutes are

---

[2] Wis. Stat. § 19.81 (3): "In conformance with article IV, section 10, of the constitution, which states that the doors of

100

interpreted to give effect to every word. A court assumes that the legislature says what it means, and means what it says. The words in a statute are not to be treated as rhetorical flair.

¶ 89. Nevertheless, the Attorney General asserts that the legislature need not abide by the Open Meetings Law; that the legislature can choose when and if it will follow the Open Meetings Law; and that courts cannot enforce the Open Meetings Law against the legislature and any of its committees.[3]

¶ 90. The legislature must play by the rules of the Wisconsin Constitution and the laws.

¶ 91. Playing by the rules and playing fair are integral to public trust and confidence in our government officials—legislative, executive, and judicial. Public trust and confidence in the integrity of the judicial branch is engendered by a court's issuing a reasoned public decision based on public records after public arguments. The judicial branch claims legitimacy by the reasoning of its decisions. "Any step that withdraws

each house shall remain open, except when the public welfare requires secrecy, it is declared to be the intent of the legislature to comply to the fullest extent with [the Open Meetings Law]."

[3] The District Attorney and Senator Miller assert that the Attorney General is attacking the constitutionality of the Open Meetings Law by asserting that the court cannot enforce the Law against the legislature. In other words, the Attorney General is arguing that the Open Meetings Law is categorically invalid with regard to the legislature. For a discussion of a categorical attack on the constitutionality of a statute, see *State v. Ninham,* 2011 WI 33, 333 Wis. 2d 335, 797 N.W.2d 451. The Attorney General does not have the general authority to attack the constitutionality of the statute, without statutory authorization from the legislature or some other constitutional or common-law doctrine giving the Attorney General such authority. *State v. City of Oak Creek,* 2000 WI 9, ¶ 33, 232 Wis. 2d 612, 605 N.W.2d 526.

an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification."[4]

¶ 92. Trust and confidence in the integrity of the judicial branch as an institution is critical at all times but especially when a case has high public visibility, is mired in partisan politics, and is emotionally charged. The need for reasoned judgment is at its greatest in a case such as this one, in which substantial public policy and budgetary decisions of the coordinate branches may be affected.[5] The issues presented in this case are steeped in a politically charged environment and involve highly controversial public policy and budgetary matters.

¶ 93. That the judiciary has the power of judicial review, that is, the power to interpret the Constitution and hear challenges to the constitutionality of legislative enactments, without pressure from the executive or legislative branches, is a fundamental principle of the United States and Wisconsin Constitutions.

¶ 94. This fundamental principle of judicial review was described in Federalist No. 78,[6] which emphasized the importance of the separation of powers and of

---

[4] *Hicklin Eng'g, L.C. v. Bartell,* 439 F.3d 346, 348–49 (7th Cir. 2006).

[5] As other courts have admonished, reasoned judgment is especially needed "when a judicial decision accedes to the requests of a coordinate branch, lest ignorance of the basis for the decision cause the public to doubt that 'complete independence of the courts of justice [which] is peculiarly essential in a limited Constitution.'" *United States v. Aref,* 533 F.3d 72, 83 (2d Cir. 2008).

[6] The Federalist Papers, written in 1787–88, were drafted to promote ratification of the United States Constitution. They remain a significant primary source for constitutional interpretation.

an independent judiciary to ensure that legislative enactments are consistent with the constitution.

> There is no liberty, if the power of judging be not separated from the legislative and executive powers.
>
> . . . .
>
> The complete independence of the courts of justice is peculiarly essential in a limited Constitution. . . .
>
> A constitution is, in fact, and must be regarded by the judges, as a fundamental law. It therefore belongs to them to ascertain its meaning, as well as the meaning of any particular act proceeding from the legislative body.

¶ 95.   Ascertaining the meaning of the Wisconsin Constitution and whether the enactment of the Budget Repair Bill complies with constitutional directives is the essence of the present case. And the court must do so adhering to the Constitution, laws, and its own rules of procedure.

## II

¶ 96.   The order and Justice Prosser's concurrence are based on errors of fact and law. They inappropriately use this court's original jurisdiction, make their own findings of fact, mischaracterize the parties' arguments, misinterpret statutes, minimize (if not eliminate) Wisconsin constitutional guarantees, and misstate case law, appearing to silently overrule case law dating back to at least 1891. This case law recognizes a court's power to review legislative actions in enacting laws when constitutional directives are at issue.

103

## A. The Order and the Concurrence Inappropriately Use This Court's Original Jurisdiction.

¶ 97.   The order mistakenly asserts that the State of Wisconsin and Secretary Huebsch filed "a petition for supervisory/original jurisdiction pursuant to Wis. Stat. §§ (Rules) 809.70 and 809.71." No petition for original jurisdiction pursuant to Wis. Stat. § (Rule) 809.70 was filed in this court by any party. The petition that was filed is captioned "petition for supervisory writ pursuant to Wis. Stat. § 809.71 and for immediate temporary relief pursuant to Wis. Stat. § 809.52," and the text of the petition adheres to the caption.

¶ 98.   This court's authority for review is derived from the Wisconsin Constitution, which provides that the court has two types of jurisdiction:   appellate and original.[7] They are separate and distinct jurisdictions, serving different purposes. "The concept of original jurisdiction allows cases involving matters of great public importance to be commenced in the supreme court in the first instance."[8]

¶ 99.   There is nothing "original" or "in the first instance" here. By commencing an original action on the court's own motion to review the final judgment of

---

[7] *See* Wis. Const. art. VII, § 3(2): "The supreme court has appellate jurisdiction over all courts and may hear original actions and proceedings."

[8] Michael S. Heffernan, *Appellate Practice and Procedure in Wisconsin* § 25.1 (5th ed. 2011). *See also Petition of Heil,* 230 Wis. 428, 446, 284 N.W. 42 (1938); *In re Exercise of Original Jurisdiction,* 201 Wis. 123, 229 N.W. 643 (1930).

This case is not an original action in any sense of the phrase. The Dane County Circuit Court has already issued a final determination regarding each and every question of fact and question of law that is addressed in the order.

104

the circuit court, the order and Justice Prosser's concurrence are blending the separate and distinct concepts of original and appellate jurisdiction.[9]

[9] A petition for an original action will be granted when the questions presented are of such importance "to call for a speedy and authoritative determination by this court in the first instance . . . ." *Petition of Heil,* 230 Wis. 428, 446, 284 N.W. 42 (1939).

This court has previously taken original jurisdiction in two cases despite an identical case pending before the circuit court. In both cases the issue was narrow and an emergency existed with no other remedy available; an appeal could not be taken timely to get the person on the ballot within the statutory framework for printing ballots; review was necessary to protect Wisconsin citizens' right to vote for the candidate of their choosing. *See State of Wisconsin ex rel. Nader v. Circuit Court for Dane County,* No. 2004AP2559-W, unpublished order (2004); *State ex rel. Barber v. Circuit Court for Marathon County,* 178 Wis. 468, 190 N.W. 563 (1922).

In the present case, there is no such exigency. First, the issues presented raise fundamental constitutional principles relating to the powers of the executive, legislative, and judicial branches of government, as well as questions regarding the scope of the rights of the people of this State to know about the actions taken by their government and their right to access the legislative process. The issues are not narrow, and the issues involve conflicting precedent.

Second, there is no "emergency." The Attorney General asserts that an emergency exists because each day the alleged breach of separation of powers is not resolved irreparable damage is done to the representative government of this State. But if that assertion meets the definition of "emergency," then any time any party asserts that a law or an action is unconstitutional it would constitute an "emergency" for this court to decide. That's not the law of the state or country.

The "ordinary course" of an appeal could afford the petitioners any warranted relief. In the alternative, the legislature could pass the Budget Repair Bill in conformance with the Open

¶ 100.   Why is this important? By blending what are under our constitutional authority separate and distinct jurisdictions—original and appellate—the order and concurrence attempt to skirt the normal standards of appellate review. Faced with no record, they conjure their own facts—something this court should never do, regardless of whether it is exercising appellate or original jurisdiction.

¶ 101.   If this court wishes to take jurisdiction of the factual and legal issues presented in this matter, the legitimate and constitutional route is through an appeal. And indeed Justice Prosser reviews the circuit court's decision as if this case were an appeal.

### B.  The Order and the Concurrence Make Their Own Factual Findings.

¶ 102.   The order states:   "The doors of the senate and assembly were kept open to the press and members of the public during the enactment of the Act. The doors of the senate parlor, where the joint committee on conference met, were open to the press and members of the public. WisconsinEye broadcast the proceedings live.[10] Access was not denied."

¶ 103.   Footnote 1 of the order implies that these findings of fact are supported by the transcripts of the hearings before the circuit court, which were filed in "appendices accompanying the various motions and petitions filed herein."

Meetings Law, rendering the circuit court's determinations ineffective. This court could still decide the important separation of powers issues presented.

[10] Press coverage is not necessarily the equivalent of allowing the public to be present. *Cf. Douglas v. Wainwright,* 714 F.2d 1532, 1542–43 (11th Cir. 1983), *vacated,* 468 U.S. 1206 (1984), *adhered to on remand,* 739 F.2d 531 (11th Cir. 1984) (relating to the constitutional guarantee of a public trial).

¶ 104.   Justice Crooks, at ¶ 143 n.15, powerfully explains that reliance on information in transcripts not in the record before this court is a departure from settled precedent.

¶ 105.   In his concurrence, Justice Prosser makes his own factual findings. Indeed, most of his concurrence is a statement of happenings. Yet Justice Prosser asserts in ¶ 19 "that there are no issues of material fact that prevent the court from addressing the legal issues presented."

¶ 106.   Where do all of these facts come from? Not from the certification proceedings (which the order denies) or from the petition for supervisory writ (which the court transforms into an original action). Not from the decision or final judgment of the Dane County Circuit Court. Indeed, some of the "findings of fact" are in direct contravention of the facts found by the circuit court. By casting this as an original action, the four justices are able to skirt facts that may impede the rush to their ultimate destination.

¶ 107.   The four justices are entitled to their opinions, but they are not entitled to their own facts. This court is not a fact-finding court.

¶ 108.   If findings of fact are required in the exercise of our original jurisdiction, there are procedures for getting those facts. Instead of adhering to those procedures, the four justices set forth their own version of facts without evidence. They should not engage in this disinformation.

C. The Order and the Concurrence Mischaracterize the Arguments of the Parties.

¶ 109.   No party argues to the court, as the order claims, that "the legislature amended Article IV, Section 10 of the Wisconsin Constitution by its enactment of

the Open Meetings Law." The order builds a straw house so that it can blow it down.

¶ 110. Justice Prosser suggests that the argument of the parties is that the Open Meetings Law is a codification of Article IV, Section 10 of the Wisconsin Constitution such that the statutes amend the Constitution. Justice Prosser too builds a straw house to blow down with uncontested, accepted blackletter law that the Wisconsin Constitution cannot be changed by statute.

D. The Order and the Concurrence Fail to Address Adequately the Role of the Secretary of State.

¶ 111. The order and concurrence fail to examine carefully the arguments of the Secretary of State about the respective roles of the Secretary of State and the Legislative Reference Bureau in the publication of legislative acts, the printing of notice in the official state newspaper, and the effective date of a statute. *See* Wis. Stat. §§ 14.38(10), 35.095(3)(b), 991.11.

E. The Order and the Concurrence Minimize, If Not Eliminate, The Wisconsin Constitutional Guarantee, Article IV, Section 10, That "The Doors of Each House Shall Be Kept Open."

¶ 112. This constitutional provision, Article IV, Section 10 of the Wisconsin Constitution, has never before been interpreted by this court or any Wisconsin court. The order interprets and dismisses the constitutional provision in four short sentences without citation or rationale—an unsupported, four-sentence interpretation of a fundamental constitutional guarantee ensured by the people of Wisconsin!

108

¶ 113. After stating its own factual findings, the order dismisses the significant constitutional argument with four words: "Access was not denied." By this interpretation, the constitutional right of the people to know what its legislature is doing has been significantly minimized, if not eliminated.

¶ 114. Instead of the order's four-sentence analysis of this important constitutional provision, Justice Prosser sets forth a two-paragraph analysis. He goes further than the order with a novel interpretation of this constitutional provision. He states that the "manifest purpose" of Article IV, Section 10 of the Wisconsin Constitution is "to prevent *state* legislative business from being conducted in secret except in extremely limited circumstances." From whence cometh Justice Prosser's "manifest purpose?" He doesn't say.

F. The Order and the Concurrence Misstate
Case Law, Appearing To Silently Overrule A
Court's Power To Review Legislative Actions For
Compliance With Constitutional Directives.

¶ 115. The order and Justice Prosser's concurring opinion treat the answers to the significant questions of law presented as clear and beyond dispute, controlled by uncontroverted precedent. The order and the concurrence do not tell the full legal story.

¶ 116. The court of appeals certified the legal questions to this court because the answers are not clear and our precedent is conflicting. The court of appeals determined that clarification is required regarding "the interaction between the Open Meetings Law and a line of cases dealing with the separation of power doctrine," citing to four cases: *Goodland v. Zimmerman,* 243 Wis. 459, 10 N.W.2d 180 (1943); *State*

109

*ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 239 N.W.2d 313 (1976); *State ex rel. La Follette v. Stitt,* 114 Wis. 2d 358, 338 N.W.2d 684 (1983); and *Milwaukee Journal Sentinel v. Wisconsin Dep't of Admin.,* 2009 WI 79, 319 Wis. 2d 439, 768 N.W.2d 700.

¶ 117. "In sum," the court of appeals stated, "*Goodland* and *Stitt* appear to favor the Secretary of State's position [the position now forwarded by the State of Wisconsin and Secretary Huebsch] that courts lack authority to invalidate legislation enacted in violation of the Open Meetings Law or, at the least, to do so before publication. In contrast, *Lynch* and *Milwaukee Journal Sentinel* support the District Attorney's view."

¶ 118. Neither the order nor the concurrence comes to grips with the issue in the present case, namely whether the Open Meetings Law complies with constitutional directives, specifically Article IV, Section 10 and Article I, Section 4, so that the court must enforce the Open Meetings Law.

¶ 119. First, the order misrepresents *Milwaukee Journal Sentinel v. Wisconsin Department of Administration,* 2009 WI 79, 319 Wis. 2d 439, 768 N.W.2d 700, as not involving the legislature's compliance with a statute. In the *Milwaukee Journal Sentinel* case, the court declared that it had jurisdiction to determine whether the legislature complied with Wis. Stat. § 111.92(1)(a), a statute governing legislative procedure, because that statute furthered the constitutional directives found in Article IV, Section 17(2) of the Wisconsin Constitution.

¶ 120. Second, the order fails to acknowledge that the *Milwaukee Journal Sentinel* case explained that a court will interpret and apply a procedural statute to determine whether the legislative action complies "with constitutional directives":

110

[W]e need not decide whether Wis. Stat. § 111.92(1)(a) is a rule of legislative proceeding because a statute's terms must be interpreted to comply with constitutional directives. Accordingly, even if the statute might otherwise be characterized as a legislative rule of proceeding, we may interpret the statute and apply it to the legislative action to determine whether that action complies with the relevant constitutional mandates. *Marbury v. Madison,* 5 U.S. (1 Cranch) 137 (1803); [*State ex rel. La Follette v.*] *Stitt,* 114 Wis. 2d [358, at] 367, [338 N.W.2d 684 (1983)]; *McDonald v. State,* 80 Wis. 407, 411–12, 50 N.W. 185 (1891).

Therefore, because both Wis. Stat. § 111.92(1)(a) and Article IV, Section 17(2) require the legislature to take additional actions to amend existing law or to create new law, and we have jurisdiction to interpret the Wisconsin Constitution and the Wisconsin Statutes, we have the authority to evaluate legislative compliance with § 111.92(1)(a). *Stitt,* 114 Wis. 2d at 367, 338 N.W.2d 684. Accordingly, we reject WSEU's argument in this respect, and proceed to determine whether the legislature complied with § 111.92(1)(a) in light of the Wisconsin Constitution.

*Milwaukee Journal Sentinel,* 319 Wis. 2d 439, ¶¶ 19, 20 (footnote omitted).

¶ 121.   Justice Prosser fails to mention the case.

¶ 122.   The *Milwaukee Journal Sentinel* case was based on at least three earlier cases, all concluding that a court may require the legislature to comply with a legislative procedural rule or statute if the procedural rule or statute furthers a constitutional directive.[11]

---

[11] *See State ex rel. La Follette v. Stitt,* 114 Wis. 2d 358, 364, 338 N.W.2d 684 (1983) (A court "will not intermeddle in what we view, *in the absence of constitutional directives to the contrary,* to be purely legislative concerns . . . . [C]ourts generally consider that the legislature's adherence to the rules or statutes prescrib-

¶ 123. The order and Justice Prosser's concurrence put in jeopardy *Milwaukee Journal Sentinel* and prior case law that declares that a court may determine whether legislative action in enactment of a law complies with a relevant constitutional directive.

¶ 124. *Milwaukee Journal Sentinel* (and its precursors) correctly state the applicable principles of judicial review, the doctrine of separation of powers, and the functions of the legislature and judiciary.

## III

¶ 125. In sum, the litigants and the public deserve more than the majority's hasty judgment.

¶ 126. Each person must abide by the law. Each branch of government must abide by the law. This court must ensure that the law governing judicial decision-making is followed. Justice Brandeis stated these principles eloquently as follows:

> In a government of laws, existence of the government
> will be imperiled if it fails to observe the law scrupu-

---

ing procedure is a matter entirely within legislative control and discretion, not subject to judicial review *unless the legislative procedure is mandated by the constitution*" (emphasis added).).

See *State ex rel. Lynch v. Conta,* 71 Wis. 2d 662, 695, 239 N.W.2d 313 (1976), in which the court was asked to enforce an earlier version of the Open Meetings Law. The court observed that the "time-honored precept, established in *Marbury v. Madison,* [provides that] the judiciary may review the acts of the legislature *for any conflict with the Constitution*" (emphasis added).

As early as *McDonald v. State,* 80 Wis. 407, 411–12, 50 N.W. 185 (1891), substantially similar language appeared: "The bill for ch. 488 was therefore regularly passed, and the chapter is a valid law, unless it comes within the provisions of sec. 8, art. VIII, of the [Wisconsin] constitution" (emphasis added).

lously. Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. . . . Against that pernicious doctrine this court should resolutely set its face.

*Olmstead v. United States,* 277 U.S. 438, 485 (1928) (Brandeis, J., dissenting).

¶ 127. The resoluteness called for by Justice Brandeis is no less applicable to the observance of the fundamental principles of the courts in our system of government. Unreasoned judgments breed contempt for the law. The majority, by sacrificing honest reasoning, leads us down a pernicious path. The order today departs from fundamental principles. It fails to abide by the court's Constitutional authority and its own rules and procedures and harms the rights of the people from whom our authority derives.[12] The legitimate and constitutional route to decide the issues presented is through an appeal.

¶ 128. For the reasons stated, I do not join the order.

¶ 129. I am authorized to state that Justices ANN WALSH BRADLEY and N. PATRICK CROOKS join this writing.

¶ 130. N. PATRICK CROOKS, J. (*concurring in part and dissenting in part*). These matters exemplify the importance of compliance with procedural rules and the rule of law to the legitimacy of our government. Just as

---

[12] Our state constitution declares: "The blessings of a free government can only be maintained by a firm adherence to justice, moderation, temperance, frugality and virtue, and by frequent recurrence to fundamental principles." Wis. Const. art. I, § 22.

there is a right way and a wrong way to proceed with the legislative process, there is a right way and a wrong way to accept the significant issues presented for review. I dissent in part because, in taking these matters as an original action and swiftly vacating the circuit court's orders without sufficient examination, the majority has proceeded the wrong way.

¶ 131.   I concur in part because I agree with the majority that it is imperative that this court address the weighty and complicated questions presented here. It is of great significance to the people of Wisconsin whether the legislature is required to follow the Open Meetings Law, which apparently it has tied to the Wisconsin Constitution, and if so, how it may be held accountable. It is important not only here where the Act at issue, 2011 Wisconsin Act 10, was hotly debated, but in every case where the legislature acts on behalf of the people. Those who would rush to judgment on these matters are essentially taking the position that getting this opinion out is more important than doing it right and getting it right. As this court recently stated, and as the Honorable Maryann Sumi repeated in her decision in regard to these matters, "The right of the people to monitor the people's business is one of the core principles of democracy."[1] I also concur because I agree with the majority that Act 10 is not in effect, and that the certification and motions for temporary relief in case No. 2011AP613–LV should be denied.

¶ 132.   Specifically, this case raises the following questions: (1) Is the Open Meetings Law[2] enforceable

---

[1] *Schill v. Wis. Rapids Sch. Dist.*, 2010 WI 86, ¶ 2, 327 Wis. 2d 572, 786 N.W.2d 177.

[2] Wis. Stat. §§ 19.81–19.98 (2009–10).

All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

against the legislature and, if so, what sanctions are appropriate? (2) May a court ever void an Act because of an Open Meetings Law violation? (3) May a court prohibit the publication, implementation, or effectiveness of an Act passed in violation of the Open Meetings Law, or must a court wait until after the Act is published?

¶ 133.  There is no question that these issues are worthy of this court's review. But procedures matter—to the courts, the legislature, and the people of Wisconsin. There is a right way to address these issues and a wrong way. The majority chooses the wrong way by refusing to take this case through the appropriate procedural mechanism, and by rushing to issue an order without sufficient examination or a complete record. I concur in part because I agree with the majority's decision to address these important questions. I dissent in part due to the majority's decision to utilize inappropriately this court's original jurisdiction and due to its issuing a hasty order without sufficient consideration, and without adequately addressing all of the parties' arguments. I am convinced that these significant issues should be addressed through a direct appeal, which would allow this court to more fully resolve, with the benefit of a complete record, the complex legal and factual issues at stake.

I

¶ 134.  In addition to the procedural morass that the majority's terse, hasty order attempts to sweep under the rug, there are important legal issues pertaining to the merits of these cases that it fails to fully resolve. To explain just what these issues are, I first provide an overview of the legal landscape.

115

¶ 135. At the center of these matters, and at the heart of the Open Meetings Law, is the mandate in Wisconsin's constitution that "[t]he doors of each house shall be kept open except when the public welfare shall require secrecy."[3] The legislature enacted the Open Meetings Law, in part, to comply with this constitutional directive.[4]

¶ 136. Relevant to this case, the legislature required meetings of a "governmental body" be properly noticed and open to the public.[5] It also appeared to make it clear that these access and notice requirements apply to itself and its committees.[6] The legislature authorized the district attorney to prosecute viola-

---

[3] Wis. Const. art. IV, § 10.

[4] Wisconsin Stat. § 19.81(3) provides: "*In conformance with article IV, section 10, of the constitution,* which states that the doors of each house shall remain open, except when the public welfare requires secrecy, it is declared to be the intent of the legislature to comply to the fullest extent with this subchapter." (Emphasis added.)

[5] Wisconsin Stat. § 19.83(1) provides in relevant part: "Every meeting of a governmental body shall be preceded by public notice as provided in s. 19.84, and shall be held in open session." Wisconsin Stat. § 19.84(3) provides in relevant part: "Public notice of every meeting of a governmental body shall be given at least 24 hours prior to the commencement of such meeting unless for good cause such notice is impossible or impractical, in which case shorter notice may be given, but in no case may the notice be provided less than 2 hours in advance of the meeting."

[6] Wisconsin Stat. § 19.82(1) defines a "[g]overnmental body" as "a state or local agency, board, commission, committee, council, department or public body corporate and politic created by constitution, statute, ordinance, rule or order." Wisconsin Stat. § 19.87 further explicitly states that the Open Meetings Law "shall apply to all meetings of the senate and assembly and the committees, subcommittees and other subunits thereof," with the exception of certain meetings not at issue here.

116

tions.[7] And finally, it directed courts to enjoin or void actions taken in violation of the Open Meetings Law.[8]

¶ 137.   It is this court's obligation to harmonize the existing precedent and to apply this explicit statutory language to give effect to the legislative intent. The core legal issues presented by this case are not as easily resolved as the majority's order suggests: (1) Are the Open Meetings Law's access or notice provisions as constitutionally based requirements enforceable against the legislature or its committees? (2) If so, is declaring an act void among the sanctions a court may impose regarding a legislative action taken in violation of this law? (3) Does a court have the authority to enjoin the publication, implementation, or effectiveness of an act, where

[7] Wisconsin Stat. § 19.97(1) provides in relevant part that the Open Meetings Law "shall be enforced in the name and on behalf of the state by the attorney general or, upon the verified complaint of any person, by the district attorney of any county wherein a violation may occur." Unlike the situation in *State v. City of Oak Creek,* 2000 WI 9, ¶ 1, 232 Wis. 2d 612, 605 N.W.2d 526, in which this court recognized that the attorney general's authority is statutorily defined and concluded that the attorney general lacked the authority to challenge the constitutionality of the statute at issue, the Open Meetings Law expressly authorizes the district attorney to enforce its provisions.

[8] Subsections (2) and (3) of Wis. Stat. § 19.97 provide:

(2) . . . [T]he attorney general or the district attorney may commence an action . . . to obtain such other legal or equitable relief, including but not limited to mandamus, injunction or declaratory judgment, as may be appropriate under the circumstances.

(3) Any action taken at a meeting of a governmental body held in violation of this subchapter is voidable, upon action brought by the attorney general or the district attorney of the county wherein the violation occurred. However, any judgment declaring such action void shall not be entered unless the court finds, under the facts of the particular case, that the public interest in the enforcement of this subchapter outweighs any public interest which there may be in sustaining the validity of the action taken.

117

some part of the legislative process was conducted in violation of the Open Meetings Law, but the act was passed by the legislature and signed by the governor? Instead, a review of precedent raises additional questions that the majority does not address.

¶ 138. In *Goodland v. Zimmerman,* this court provided that "the court has power to declare invalid an act of the legislature which contravenes constitutional provisions. That principle . . . is no longer open to debate."[9] However, we also stated that "[t]he judicial department has no jurisdiction or right to interfere with the legislative process."[10] In light of *Goodland,* may a court ever prevent the publication or implementation of an Act, or must it wait to void an Act until after it is published? What if the legislature chose to impose a check on itself, enforceable in court, and tied to its constitutional mandate to provide access? Can the court be said to invade the province of the legislature when the legislature has invited it into that process?

¶ 139. In *State ex rel. La Follette v. Stitt,* we stated that courts will not review or void an act of the legislature based on its failure to comply with its own procedural rules, unless those rules embody a constitutional requirement.[11] Consistent with this principle, we recently reviewed the validity of a legislative action based on a question of the legislature's compliance with a procedural statute that was tied to a constitutional requirement.[12] So a key question is: what part of the

[9] 243 Wis. 459, 470–71, 10 N.W.2d 180 (1943).

[10] *Id.* at 467.

[11] 114 Wis. 2d 358, 364–67, 338 N.W.2d 684 (1983).

[12] *Milwaukee Journal Sentinel v. Dep't of Admin.,* 2009 WI 79, ¶¶ 19–20, 319 Wis. 2d 439, 768 N.W.2d 700 (concluding that "we have the authority to evaluate legislative compliance with

Open Meetings Law embodies a constitutional requirement? If any Open Meetings Law provisions that are tied to the constitution were violated in this case, was the circuit court permitted to void the act?[13]

¶ 140. All of these highly important questions, which define the respective authority and duty of the legislature and the courts, are left without complete answers and thorough discussion. These cases implicate this court's obligation to interpret, apply and develop the law. The tough questions raised by an examination of the relevant precedent could be resolved by a thoughtful application of the plain language of the Open Meetings Law to this precedent. Instead, the majority brushes these questions aside in its hasty decision and fails to fully examine our precedent. "Adherence to precedent must then be the rule rather than the exception if litigants are to have faith in the even-handed adminis-

§ 111.92(1)" because "even if the statute might otherwise be characterized as a legislative rule of proceeding, we may interpret the statute and apply it to the legislative action to determine whether that action complies with the relevant constitutional mandates").

[13] This begs another question: Does the attorney general's argument in the petition for a supervisory writ case, on behalf of the Department of Administration, amount to an attack on the constitutionality of the Open Meetings Law as applied to the legislature? The attorney general has argued that the Open Meetings Law is merely "aspirational" as to the legislature because, according to the attorney general, courts may only invalidate a legislative act that conflicts with the constitution and not based on a violation of statutory rules. This question is significant because, as explained in *City of Oak Creek*, the attorney general has no general authority to challenge the constitutionality of a statute. *City of Oak Creek*, 232 Wis. 2d 612, ¶ 1.

tration of justice in the courts."[14] Justice Cardozo's admonition applies equally to deciding the substantive issues presented here as to choosing the best procedural way to accept these cases for review.

## II

¶ 141. For both practical and institutional reasons, the right way to go about answering these weighty and significant questions would be for these issues to be presented to this court as a direct appeal of the final judgment entered by the circuit court for Dane County.

¶ 142. The practical reasons that a direct appeal makes the most sense are based on the desirability of deciding these issues with all the available information, and in the most focused and efficient way. They have to do with the nuts and bolts of the process of receiving cases for various types of review at this court. These matters did not come to us as a direct appeal of a judgment but rather through two separate methods: an appeal and certification of a temporary order and a rarely used process, a supervisory writ, provided by statute, both filed before the circuit court's findings, conclusions and judgment.

¶ 143. Due to the unusual posture, we have no access to the complete record that was compiled in the circuit court that included the transcripts of the days of testimony taken in the circuit court,[15] the exhibits

---

[14] Benjamin N. Cardozo, *The Nature of the Judicial Process* 34 (1921).

[15] While the majority's order implies that this court may consider whatever transcripts were filed in appendices to materials submitted to this court, that is a departure from settled precedent that is sure to cause grave concern among appellate lawyers. *State v. Kuhn,* 178 Wis. 2d 428, 439, 504 N.W.2d 405

entered into evidence, and the briefs filed there.[16] Many people would likely find it puzzling that under these circumstances we, the highest court in the state, cannot simply order up whatever information is needed from relevant court proceedings, especially since information

(Ct. App. 1993) (noting that an appellate court is "limited by the record before [it] and cannot consider the extraneous material included in [a party's] appendix"). This break with precedent is yet another legal casualty of the majority's hasty decision.

[16] This is particularly troubling because the majority and Justice Prosser's concurrence appear to make many factual assertions. The majority's conclusion that "the legislature did not employ a process that violated Article IV, Section 10 of the Wisconsin Constitution" is based on facts that either conflict with or are not found in the limited record before this court. Specifically, the majority states (1) "[t]he doors of the senate and assembly were kept open to the press and members of the public during the enactment of the Act," (2) "[t]he doors of the senate parlor, where the joint committee on conference met, were open to the press and members of the public," and (3) "WisconsinEye broadcast the proceedings live." The source of the facts is unclear. The majority's factual findings either conflict with or are unsupported by the circuit court's findings of fact in *State ex rel. Ozanne v. Fitzgerald,* which provide that the doors to the Senate Gallery were locked during the meeting and say nothing regarding the doors to the senate parlor or a WisconsinEye broadcast. "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Wis. Stat. § 805.17(2).

Justice Prosser's concurrence likewise relies on numerous factual assertions, some of which are based on the circuit court's findings of fact in *Ozanne,* and others whose source is unexplained. It cannot be both ways—either these are purely legal questions that require no factual findings outside of the circuit court's findings of fact (which control unless found to be clearly erroneous) or this court needs a record and a resolution of disputed facts.

121

on the testimony and evidence has been publicly disseminated, but statutes and rules prescribe the manner that cases proceed through the judicial system, and should be followed. Those procedures matter. When a case arrives before us in the posture of a direct appeal, and we grant the petition for review, certification or bypass,[17] we have access to all the information, evidence and arguments that have been presented to the court below to answer the questions presented. These cases did not arrive in that posture, and those boxes of documents, transcripts and evidence that we ordinarily review were not made available to us. When this court heard oral arguments on the question of whether to take these cases and in what manner, we heard arguments from counsel representing six parties for more than six hours. It is rather astonishing that the court would choose to decide to take and decide such an unusual and complex case without benefit of the complete record.

¶ 144. The ready availability of a direct appeal by aggrieved parties makes this all the more puzzling. The

---

[17] The path most frequently taken to this court is that parties appeal from the circuit court judgment to the court of appeals, which reviews and rules, and then petition this court for review. *See* Wis. Stat. § (Rule) 809.62. However, there are other routes provided by statute for a case to come to this court without first being reviewed by the court of appeals, whether at the request of the parties, *see* Wis. Stat. § (Rule) 809.60 (permitting parties to petition this court for review, bypassing the court of appeals), or the request of the court of appeals itself or on motion of this court, *see* Wis. Stat. § (Rule) 809.61 (permitting the court of appeals to send cases to this court by certification and authorizing this court to take jurisdiction of any action pending in the court of appeals). In each of those instances, the record in the underlying case is available to this court.

majority does not really come to grips with the obvious fact that an appeal is an available remedy here. As many of the parties to these cases have argued, it would be a simple matter for an aggrieved party to intervene in this matter and file an ordinary appeal, which would proceed the usual way.[18] This would have the added benefit of briefs and arguments solely focused on the merits of the substantive legal issues presented, what the heart of the case is really about, with the benefit of a complete record. It would be followed by the ordinary written decision fully explaining this court's analysis. And taking that path would, in addition, avoid creating unfortunate precedent; it would take the prudent approach, considering all the relevant evidence, and follow the way we handle many thorny issues that are presented to us: without rush or impatience or needless deviation from well-settled practice. For this very practical reason—having all the information that was presented in the circuit court for our review and being able

---

[18] I would hold that there is a final decision by the circuit court "as to the validity of the actions taken on March 9, 2011," (the date of the alleged Open Meetings Law violation). Pursuant to Wis. Stat. § 808.03, the circuit court's decision is a final, appealable judgment because it "disposes of the entire matter in litigation as to one or more of the parties." Aggrieved parties may intervene after a circuit court decision under the permissive intervention requirements in Wis. Stat. § 803.09, and appeal from that decision. *M & I Marshall & Ilsley Bank v. Urquhart Cos.*, 2005 WI App 225, ¶ 7, 287 Wis. 2d 623, 706 N.W.2d 335 ("This court has noted that motions to intervene must be evaluated 'with an eye toward disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'") (quoting *Wolff v. Town of Jamestown*, 229 Wis. 2d 738, 742–43, 601 N.W.2d 301 (Ct. App. 1999)). I recognize that the circuit court stated that the separate forfeiture claims against some legislators "are held in abeyance pending expiration or waiver of their legislative immunity."

123

to give the biggest questions presented our full attention—these matters, especially given the significant questions involved, would best be reviewed in the posture of a direct appeal.

¶ 145. But as compelling as those practical reasons are, the greater reason that a direct appeal is the best way is that it is the procedurally correct way – no shortcuts, no cut corners, no unnecessary invocation of rarely used powers. Let me be clear: taking this case as an original action [publici juris or supervisory authority] is not outside this court's power; it is just the wrong choice under these circumstances. These matters, after all, are at bottom about rules and procedures. It is about whether the legislature's stated intent to abide by the Open Meetings Law provisions, in accordance with constitutional requirements, can be enforced by way of voiding a law resulting from legislative meetings that did not comply with the law. These matters are about the integrity of the rules that one branch imposes on others and apparently on itself to govern procedures. Especially in light of the public focus and intense scrutiny we must not depart from the usual method of handling cases and employ a method that disposes of the issues with atypical speed and insufficient explanation. As this court stated, "The independence of the judiciary and the legitimate exercise of judicial discretion is necessary to maintain the balance of power among the branches of government. The judiciary is cognizant . . . that it must function within established rules and precedents to maintain public trust in the integrity of the judicial process."[19] That principle is aptly illustrated here. The high-profile nature of these

[19] *State v. Speer*, 176 Wis. 2d 1101, 1124, 501 N.W.2d 429 (1993).

124

matters only gives more force to the necessity of proceeding in a way that is least likely to undermine public confidence in the independence of the judiciary. There is not only no reason to depart from the preferred method of direct review, there are many reasons to prefer it.

¶ 146.  Conversely, there are many infirmities in the alternatives that are argued by the State. There are two cases before us that we considered taking for review. I agree with the majority that one of them, the certification from the court of appeals concerning the issuance of a temporary restraining order in *State ex rel. Ozanne v. Fitzgerald,* is now moot, since a final judgment has been issued. Accepting the certification is therefore no longer an appropriate course of taking jurisdiction.[20] The petition for a supervisory writ is the wrong way, because our case law makes clear that if an appeal is an available remedy, a petition for a supervisory writ must fail.[21] As we stated in *State ex rel. Kalal v. Circuit Court for Dane Cnty,* "A supervisory writ 'is considered an extraordinary and drastic remedy that is to be issued only upon some grievous exigency.' "[22] We

---

[20] The certification from the court of appeals pursuant to Wis. Stat. § 809.61 arose from Secretary of State LaFollette's "petition for leave to appeal a temporary restraining order (TRO) issued on March 18, 2011." The March 18, 2011, TRO no longer exists because it was superseded by the circuit court's May 26, 2011, decision. There is no separate question presented by the TRO; if this court addresses the significant issues addressed above concerning the circuit court's permanent injunction, it would by definition resolve any questions concerning the TRO.

[21] *State ex rel. Dressler v. Circuit Court for Racine Cnty*, 163 Wis. 2d 622, 630, 472 N.W.2d 532 (Ct. App. 1991).

[22] 2004 WI 58, ¶ 17, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting *Dressler,* 163 Wis. 2d at 630).

made clear in that case that "[a] petition for a supervisory writ will not be granted unless [among other things] an appeal is an inadequate remedy."[23] An appeal is a simple matter and is not an inadequate remedy in this case, especially given this court's power to take a directly appealed case from the court of appeals on its own motion.

¶ 147. These cases should not be converted into a petition for an original action and taken using our original jurisdiction for several reasons: there is nothing that merits the use of that power in this instance. Such an exercise brings more of the case than we need in order to answer the central issues and bogs us down with requiring resolution of the remaining disputed factual matters.[24] As I noted above, it is beyond dispute that this court has the power to exercise its authority and take an original action utilizing our original jurisdiction. But we exercise that extraordinary power only when we have a compelling reason to do so. There is no such reason in this case. The court in *Petition of Heil* took a very pragmatic and sensible approach and stated plainly the reason that taking original jurisdiction

---

[23] *Id.* (citations omitted).

[24] As I have noted previously, the majority's order does not give adequate consideration to the distinctions between a petition for a supervisory writ and a petition for an original action. The attorney general originally petitioned for a supervisory writ and for the first time argued in Huebsch's reply brief that the petition for a supervisory writ could be "recast as a petition for original action publici juris," but no party has actually petitioned for an original action. The majority seems to have decided to recast this petition as one for an original action, and now that it has done so, it should address the procedural problems that presented such as the lack of a complete record, the disputed factual issues that must now be resolved, and who the parties are.

should be used sparingly and "on the basis of the nature of the issues involved rather than upon a mere consideration of convenience or expediency."[25] The *Heil* court urged that the system works best when the trial and appellate courts play the roles that they are designed to play:

> This court is primarily an appellate court, and it should not be burdened with matters not clearly within its province if it is to discharge in a proper and efficient manner its primary function. Mere expedition of causes, convenience of parties to actions, and the prevention of a multiplicity of suits are matters which form no basis for the exercise of original jurisdiction of this court. Because it is the principal function of the circuit court to try cases and of this court to review cases which have been tried, due regard should be had to these fundamental considerations.[26]

¶ 148. "Because this court is not a fact-finding tribunal, it generally will not exercise its original jurisdiction in matters involving contested issues of fact."[27] There are mechanisms which have been utilized, such as appointment of a special master, perhaps a reserve judge, to conduct fact-finding under the continued jurisdiction/supervision of this court.[28] Comparing the use of such mechanisms to a direct appeal, such approaches are unwieldy and time-consuming. When this court takes original jurisdiction, it takes the whole

---

[25] *Petition of Heil,* 230 Wis. 428, 448, 284 N.W. 42 (1939).

[26] *Petition of Heil,* 230 Wis. at 448.

[27] *Green for Wis. v. State Elections Bd.,* 2006 WI 120, 297 Wis. 2d 300, 302, 723 N.W.2d 418.

[28] *See Wis. Prof'l Police Ass'n, Inc. v. Lightbourn,* 2001 WI 59, ¶ 6, 243 Wis. 2d 512, 627 N.W.2d 807 (referencing the reserve judge who supervised the stipulation of facts agreed to by the parties).

tangled lot of issues and factual disputes just as if it were the trial court. Three of the parties, in their letter briefs to this court, claim that there are unresolved factual issues concerning the amount of alleged fiscal harm at stake, the rules under which the Senate and Assembly operate, the so-called "good cause" exception that permits a shorter meeting notice requirement, and the role of the secretary of state in the publication process. Clearly, it is not proper to recast the supervisory writ petition as one for an original action and to take original jurisdiction without resolving the claimed factual disputes presented. While I agree with the majority that Act 10 is not in effect, a full and complete resolution of the factual questions surrounding the appropriate procedure involving a matter such as publication needs to be set forth.

## III

¶ 149. These cases exemplify the importance of compliance with procedural rules and the rule of law in maintaining the legitimacy of our government. Just as there is a right way and a wrong way to proceed with the legislative process, there is a right way and a wrong way to accept these issues for review. I dissent in part because, in taking these matters as an original action and swiftly vacating the circuit court's orders without sufficient examination the majority has proceeded in the wrong way.

¶ 150. I concur in part because I agree with the majority that it is imperative that this court address the weighty and complicated questions presented here. It is of great significance to the people of Wisconsin whether the legislature is required to follow the Open Meetings Law, which apparently it has tied to the Wisconsin Constitution, and if so, how it may be held accountable.

128

It is important not only here where the Act at issue, 2011 Wisconsin Act 10, was hotly debated, but in every case where the legislature acts on behalf of the people. Those who would rush to judgment on these matters are essentially taking the position that getting this opinion out is more important than doing it right and getting it right. As this court recently stated and as the Honorable Maryann Sumi repeated in her decision in regard to those matters, "The right of the people to monitor the people's business is one of the core principles of democracy."[29] I also concur because I agree with the majority that Act 10 is not in effect, and that the certification and motions for temporary relief in case No. 2011AP613–LV should be denied.

¶ 151. Specifically, this case raises the following questions: (1) Is the Open Meetings Law[30] enforceable against the legislature and, if so, what sanctions are appropriate? (2) May a court ever void an Act because of an Open Meetings Law violation? (3) May a court prohibit the publication, implementation, or effectiveness of an Act passed in violation of the Open Meetings Law, or must a court wait until after the Act is published?

¶ 152. There is no question that these issues are worthy of this court's review. But procedures matter—to the courts, the legislature, and the people of Wisconsin. There is a right way to address these issues and a wrong way. The majority chooses the wrong way by refusing to take this case through the appropriate procedural mechanism, and by rushing to issue an order without sufficient examination or a complete record. I concur in part because I agree with the

---

[29] *Schill,* 327 Wis. 2d 572, ¶ 2.

[30] Wis. Stat. §§ 19.81–19.98.

majority's decision to address these important questions. I dissent in part due to the majority's decision to utilize inappropriately this court's original jurisdiction and due to its issuing a hasty order without sufficient consideration, and without adequately addressing all of the parties' arguments. I am convinced that these significant issues should be addressed through a direct appeal, which would allow this court to more fully resolve, with the benefit of a complete record, the complex legal and factual issues at stake.

¶ 153.   For these reasons, I respectfully concur in part and dissent in part.

¶ 154.   I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON and Justice ANN WALSH BRADLEY join this concurrence/dissent.